UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL LERMA,

    Petitioner,

v.

GREGORY LEWIS, Warden,

    Respondent.

Case No. 11-cv-04265-JST (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY**

Michael Lerma, a California prisoner, filed this pro se action for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the decision of the California Board of Parole Hearings (hereafter "Board" or "BPH") to deny him parole at his 2009 parole consideration hearing, and to defer his next parole hearing for fifteen years. Respondent was ordered to show cause why the petition should not be granted. Respondent has filed an answer, and petitioner has filed a traverse. For the reasons set forth below, the petition is denied.

**BACKGROUND**

Petitioner is confined pursuant to a 1981 judgment entered against him in the Sacramento County Superior Court following his guilty plea to charges of second degree murder. (Dkt. #1 at 2.) Petitioner was sentenced to fifteen years to life in state prison. (Id.)

The parole consideration hearing at issue in this federal habeas petition was held on February 25, 2009. (Pet. Ex. D6.) Following deliberations held at the conclusion of the hearing,

the Board panel announced its decision to deny petitioner parole for fifteen years, as well as the reasons for that decision. (Id. at 92-100.)

On August 19, 2009, petitioner filed a habeas petition in the Sacramento County Superior Court, claiming that the Board's decision to deny parole violated due process and equal protection and that the fifteen-year deferral of petitioner's next parole hearing violated the Ex Post Facto Clause. (Resp. Ex. 1.) Petitioner also claimed the denial of parole violated his 1981 plea agreement. (See id.) The Superior Court denied the petition in a reasoned decision on October 14, 2009. (Resp. Ex. 2.) Petitioner subsequently filed petitions for writ of habeas corpus in the California Court of Appeal and the California Supreme Court, raising the same claims. (Resp. Exs. 3, 5.) Both petitions were summarily denied. (Resp. Exs. 4, 6.)

Petitioner filed the instant federal petition for habeas relief in this Court on August 30, 2011. This Court found that petitioner had raised the following claims: (1) the Board's 2009 parole denial was not supported by sufficient evidence, thus depriving petitioner of due process; and (2) the Board had an underground blanket policy of denying parole to all inmates placed in the security housing unit ("SHU") as validated prison gang members, and the Board did not provide petitioner with individualized consideration, thus depriving petitioner of equal protection.

The Court dismissed the due process claim pursuant to the Supreme Court's decision in Swarthout v. Cooke, 131 S. Ct. 859 (2011), which held that a prisoner's federal due process claim regarding a denial of parole is limited to whether the prisoner was given an opportunity to be heard and statement of reasons for the denial. Id. at 861-62. The Court found, however, that petitioner's equal protection allegations stated a cognizable claim for relief and ordered respondent to show cause.

On September 11, 2011, petitioner filed a supplemental petition arguing that the fifteen-year deferral of his next parole hearing violated the Ex Post Facto Clause, and the denial of parole violated his 1981 plea agreement.

On March 6, 2012, respondent moved to dismiss the petition for failure to state a claim and as untimely. By order issued February 1, 2013, this Court granted the motion as to the claims in

the supplemental petition and denied the motion as to the equal protection claim. In sum, petitioner's equal protection claim remains to be adjudicated on the merits.

**DISCUSSION**

A.   Standard of Review

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412–13 (2000). Additionally, habeas relief is warranted only if the constitutional error at issue had a "substantial and injurious effect or influence in determining the jury's verdict." Penry v. Johnson, 532 U.S. 782, 795 (2001) (internal citation omitted).

A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." Williams, 529 U.S. at 405-06. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent

judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Id.</u> at 411.

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence. "[C]learly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." <u>Williams</u>, 529 U.S. at 412. Only Supreme Court holdings that "squarely address[]" the issue presented are clearly established precedent under AEDPA. <u>Wright v. Van Patten</u>, 552 U.S. 120, 125 (2008). "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." <u>Mitchell v. Esparza</u>, 540 U.S. 12, 17 (2003).

B.   <u>Analysis</u>

As noted above, only one claim remains to be adjudicated on the merits. Specifically, petitioner argues that he did not receive individualized consideration, because the Board had an "underground" policy of uniformly denying parole to all inmates placed in the SHU as validated prison gang members. Based on this alleged no-parole policy, petitioner argues that his equal protection rights have been violated.

Although the Sacramento County Superior Court issued a reasoned decision denying petitioner's state habeas petition, it did not address petitioner's equal protection claim on the merits. (Resp. Ex. 2.) Rather, the claim was summarily denied. (<u>See id.</u>)[1] When presented with a state court decision that is unaccompanied by a rationale for its conclusions, a federal court must conduct an independent review of the record to determine whether the state court decision is objectively reasonable. See <u>Delgado v. Lewis</u>, 223 F.3d 976, 982 (9th Cir. 2000). This "[i]ndependent review . . . is not de novo review of the constitutional issue, but rather, the only method by which [a federal court] can determine whether a silent state court decision is objectively unreasonable." <u>See Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003). "Where a

---

[1] The state court issued a reasoned decision addressing petitioner's due process and ex post facto claims. (Resp. Ex. 2.)

4

state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." See Harrington v. Richter, 131 S. Ct. 770, 784 (2011).

Petitioner's claim that the BPH did not give him individualized consideration must be rejected because he has not shown there to be any clearly established Supreme Court authority requiring such treatment in the parole context.  The Supreme Court has never "squarely addressed" an inmate's equal protection rights in the parole context.  Wright, 553 U.S. at 125.  Thus, the state court's rejection of his equal protection claim cannot be said to be contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court.

Even if cases outside the parole context could be considered as the clearly established federal law on equal protection for federal habeas purposes, the principle is rather simple: the "Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (quoting Plyler v. Doe, 457 U.S. 202, 216, (1982)).  An equal protection challenge under the Fourteenth Amendment requires allegations that parole statutes distinguish between categories of criminal offenders.  These statutes are reviewed under a rational basis test because prisoners are not a suspect class and there is no fundamental constitutional right to parole.  See Glauner v. Miller, 184 F.3d 1053, 1054 (9th Cir. 1999) (Nevada legislature did not lack a rational basis for requiring more scrutiny of sexual offenders in parole matters than other classes of criminals due to heightened recidivism concerns).

The record does not support petitioner's claim.  First, petitioner's evidence does not establish that the Board has a blanket policy against granting parole to inmates placed in the SHU due to gang affiliation.  In support of his claim, petitioner provides BPH newsletter excerpts showing statistical information on the number of inmates who were granted or denied parole between 2007 and 2010 (Pet. Ex. Q), and declarations from ten inmates who were denied parole and are housed in the SHU based on their validations as prison gang members or associates (Pet.

Ex. E.). The newsletter excerpts do not show that the Board has a prejudice against gang-affiliated SHU inmates because it does not specify any differences in parole outcomes for those inmates housed in the general population as compared to those housed in the SHU. (Pet. Ex. Q.) Likewise, the declarations are not evidence that the Board has a no-parole policy for validated prison gang members housed in the SHU. The declarations were all signed in June and July of 2009 and appear to have been submitted in support of petitioner's state petition. The declarants all generally state that the Board denied them parole because they were validated as prison gang members and housed in the SHU. (Pet. Ex. E.) With the exception of a few pages, however, there are no parole hearing transcripts supporting the inmates' claims. See Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011) (review under section 2254(d)(1) is limited to the record that was before the state court). Indeed, the declarations show that the inmates remain eligible for parole and that the Board reviews them periodically for parole suitability. (Pet. Ex. E.) In sum, there is no evidence of a blanket no-parole policy for gang-validated SHU inmates. At most, petitioner has shown that some inmates were granted parole while he was not and that the Board sometimes uses gang-affiliation as a factor in denying parole. This does not rise to the level of an equal protection violation. See Bennett v. California, 406 F.2d 36, 38-39 (9th Cir. 1969) (denying inmate's equal protection claim based on allegation that other inmates were released from prison before him, noting "[t]he Constitution does not make it legally impossible for a state, in granting or refusing parole, to make an individualized judgment in each case.")

Second, assuming arguendo there is a blanket no-parole policy discriminating against gang-validated SHU inmates, petitioner fails to demonstrate that the Board applied the policy in his case. The 104–page transcript of petitioner's February 25, 2009 parole hearing plainly shows that he was given individualized consideration. Specifically, the Board based its denial on the following: petitioner is serving his second indeterminate prison term for murder; he continues to lack remorse for, and insight into, his past criminal conduct; he continues to be validated as a prison-gang associate and participate in prison gang activity; he has not adequately participated in prison work and other self-help; he has a lengthy history of serious disciplinary violations, 25 in

total; and he has an unfavorable psychological report placing him in the high risk range for future violence. (Pet. Ex. D6 at 92-100.) The BPH also identified the circumstances of petitioner's commitment offense, prior criminality, unstable social history, history of drug and alcohol use, and problems with his parole plans as the reasons for finding him unsuitable. (See id.) In sum, the record makes clear that the Board provided ample justification for its denial of parole. There is no evidence that the Board's decision was arbitrary or based solely on petitioner's status as a SHU prisoner, due to gang affiliation. The Board relied on many factors, only one of which was related to petitioner's gang activity. As such, the Court finds no basis for an inference of an intent to discriminate based on an impermissible characteristic and petitioner has not demonstrated otherwise.

Accordingly, petitioner's claim must be denied because he has failed to show that there was "no reasonable basis for the state court to deny relief," Richter, 131 S. Ct. at 784, that is, he has not shown that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, 28 U.S.C. § 2254(d). As such, petitioner is not entitled to habeas relief.

C.   Certificate of Appealability

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability. See Rules Governing § 2254 Case, Rule 11(a).

A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard. Id. § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Here, petitioner has not made such a showing, and, accordingly, a certificate of appealability will be denied.

## CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is DENIED, and a certificate of appealability is DENIED.

The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

Dated: September 7, 2014

_____
JON S. TIGAR
United States District Judge